IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY RODRIQUES, | ) | |
| Plaintiff | ) | C.A. No. 22-25 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| MDJ THOMAS CARNEY, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

Plaintiff Anthony Rodriques initiated this civil rights action by filing a complaint

pursuant to 42 U.S.C. § 1983 on January 25, 2022. Plaintiff subsequently filed an amended

complaint on February 22, 2022 [ECF No. 4], which superseded the original complaint and is the

operative pleading in this case. Named as Defendants are: Erie County Magisterial District Judge

Thomas Carney, in both his official and individual capacities ("MDJ Carney"); Erie County

Magisterial District Judge Edward Wilson, in both his official and individual capacities ("MDJ

Wilson"); and County of Erie, Pennsylvania ("Erie County").[1] (For ease of reference, Defendants

MDJ Carney and MDJ Wilson will be collectively referred to as "Judicial Defendants").

Plaintiff is an African-American attorney who practices in Erie County, Pennsylvania.

Plaintiff asserts that MDJ Carney was aggressive and confrontational toward him during a

preliminary hearing, and on other unspecified occasions, and has behaved in a similar manner

toward another black attorney who has appeared before him (ECF No. 3, at ¶¶ 1-3). After

Plaintiff complained to then-Erie County President Judge John Trucilla about MDJ Carney's

---

[1] To date, in does not appear from the docket that Defendant Erie County has ever been served with the complaint in this matter, and no appearance has been entered on its behalf.

behavior, MDJ Carney recused himself from all matters involving Plaintiff (Id. at ¶¶ 4-10); however, despite the recusal, MDJ Carney subsequently presided over a civil matter filed against Plaintiff by one of his former clients (Id. at ¶¶ 11-12).

Plaintiff alleges further that MDJ Carney's office refused to provide him with the case file of a criminal defendant, Adrian Thrower ("Thrower"), Plaintiff was retained to represent because Thrower was not yet under arrest (Id. at ¶¶ 14-16). In addition, Plaintiff alleges that MDJ Carney's office refused to provide him with copies of the criminal complaint and affidavit of probable cause against Thrower's co-defendant, Anika Duran ("Duran"), because Plaintiff did not represent her (Id. at ¶¶ 14-15, 18). Plaintiff alleges that both refusals were based on his race (Id. at ¶ 16).

The case against Thrower was subsequently transferred to MDJ Wilson (Id. at ¶19). Prior to Thrower's initial appearance, Plaintiff contacted MDJ Wilson's office and requested copies of the complaint and affidavit of probable cause against Duran; however, MDJ Wilson refused to provide the documents to Plaintiff allegedly based on a note MDJ Carney placed in Duran's case file stating that the requested documents were not to be provided to Plaintiff (Id. at ¶¶ 20-21). Instead, MDJ Wilson advised Plaintiff to contact the District Attorney's office to obtain the requested documents, remarking that he did not want to get "in the middle of it" (Id. at ¶¶ 22-23). Plaintiff alleges that he had previously called the District Attorney's office to request the documents regarding Duran, but was informed that the Assistant District Attorney assigned to the case was in trial and would contact Plaintiff in a couple of days (Id. at ¶ 24). Nonetheless, Plaintiff alleges that he never received the complaint and affidavit of probable case pertaining to Duran (Id. at ¶ 25).

Based on the foregoing allegations, Plaintiff raises three claims against the Judicial

Defendants: (i) "deprivation of rights" under 42 U.S.C. § 1983 (Counts I and II); (ii) tortious interference with a contract (Counts III and IV); and (iii) negligence (Counts V and VI). As relief for his claims, Plaintiff seeks monetary damages.

On May 9, 2022, the Judicial Defendants filed a motion to dismiss [ECF No. 12], arguing that Plaintiff's official capacity claims against them are barred by Eleventh Amendment immunity, and the individual claims against them are barred by absolute judicial immunity. Plaintiff has since filed a response to the Judicial Defendants' motion [ECF No. 20]. This matter is now ripe for consideration.

## II.   DISCUSSION

### A.   Eleventh Amendment Immunity

Suits against the state are barred by the Eleventh Amendment. Alabama v. Pugh, 438 U.S. 781, 781–82 (1978). Eleventh Amendment immunity applies to suits regardless of the relief sought. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–01 (1984). The Supreme Court has held that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985), quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n. 55 (1978). Suits against a state agency or a state department thus are considered to be suits against a state which are barred by the Eleventh Amendment. Geis v. Board of Educ. of ParsippanyTroy Hills, Morris Cnty., 774 F.2d 575, 580 (3d Cir.1985); accord Hafer v. Melo, 502 U.S. 21, 25 (1991). In other words, suits against state officials for acts taken in their official capacity must be treated as suits against the state. Hafer, 502 U.S. at 25.

"The Commonwealth [of Pennsylvania] vests judicial power in a unified judicial system, and all courts and agencies of [that system] are part of the Commonwealth government rather

than local entities." <u>Haybarger v. Lawrence County Adult Probation and Parole</u>, 551 F.3d 193,

198 (3d Cir.2008) <u>citing</u> <u>Benn v. First Judicial Dist. of Pa.</u>, 426 F.3d 233, 240–41 (3d

Cir.2005) and Pa. Const. art. V, § 1). It is likewise settled that "Pennsylvania's judicial districts ...

are entitled to Eleventh Amendment immunity." <u>Id</u>.

The Commonwealth's unified judicial system encompasses "the courts and other officers

or agencies of the unified judicial system," including "any one or more of the judges of the court

...." 42 Pa.C.S. § 301(4). Thus, they are "an arm of the state by Pennsylvania law." <u>Erb v.

Judge</u>, 1994 WL 523203, at *2 (E.D.Pa. Sept.23, 1994); <u>cf</u>. <u>Callahan v. City of Philadelphia,</u> 207

F.3d 668, 672 (3d Cir.2000) ("All courts and agencies of the unified judicial system, including

the Philadelphia Municipal Court, are part of 'Commonwealth government' and thus are state

rather than local agencies.") (citations omitted). The magisterial district courts are part of the

Commonwealth's unified judicial system. <u>Erb</u>, 1994 WL 523202 at **1-2. As such, official

actions by these entities and their judicial officers are protected by Eleventh Amendment

immunity. <u>Azubuko v. Royal</u>, 443 F.3d 302, 303 (3d Cir.2006), <u>citing</u> <u>Mireles v. Waco</u>, 502 U.S.

9 (1991); <u>Chilcott v. Erie County Domestic Relations</u>, 283 Fed. Appx. 8, 10 (3d Cir. 2008);

<u>Marinkovic v. Mayor Joseph Sinnot et al.</u>, 2014 WL 1255886, at *10 (W.D. Pa. Mar. 26, 2014).

Accordingly, all of plaintiff's claims against the Judicial Defendants in their official capacities

will be dismissed.

**B.**     **Absolute Judicial Immunity**

It is generally accepted that judicial officers are immune from damage suits arising out of

their official duties. <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978); <u>Azubuko</u>. 443 F.3d at 303. This

immunity extends to magisterial district judges such as the Judicial Defendants. <u>Blackwell v.

Middletown Borough Police Dept.</u>, 2012 WL 4033671, at *4 (M.D. Pa. May 30, 2012), <u>citing</u>

Figueroa v. Blackburn, 208 F.3d 435, 441 (3d Cr. 2000); Martin v. Bicking, 30 F.Supp.2d 511,

512 (E.D. Pa 1998). Judicial immunity is an "immunity from suit, not just from an ultimate

assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). "A judge will not be deprived

of immunity because the action he took was in error, was done maliciously, or was in excess of

authority...." Sparkman 435 U.S. at 356; see also Forrester v. White, 484 U.S. 219, 227 (1988)

(an act "does not become less judicial by virtue of an allegation of malice or corruption of

motive"); Cleavinger v. Saxner, 474 U.S. 193, 200 (1985) ("Nor can this exemption of the judges

from civil liability by affected by the motives with which their judicial acts are performed")

(citation omitted). Furthermore, judicial immunity is not forfeited because a judge committed

"grave procedural errors," conducted a proceeding in an "informal and *ex parte*" manner, or

performed an action that was "unfair" or controversial. Gallas v. Supreme Court of Pa., 211 F.3d

760, 769 (3d Cir. 2005). A judge is immune from suit even if the judge's actions were committed

during a conspiracy. Dennis v. Sparks, 449 U.S. 24 (1980).

Judicial immunity may be overcome only when: (i) the challenged actions were not taken

in the judge's judicial capacity; or (ii) the challenged actions, "though judicial in nature, were

taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 11-12. As to the first

exception, "the factors determining whether an act by a judge is a "judicial" one relate to the

nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the

expectation of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump,

435 U.S. at 362. The Court's task is to "draw the line between truly judicial acts, for which

immunity is appropriate, and acts that simply happen to have been done by judges," such as

administrative acts. Forrester, 484 U.S. at 227.

Here, Plaintiff argues that the Judicial Defendants were performing "administrative functions," rather than "adjudicative functions," when they refused to provide him with the criminal complaint and affidavit of probable cause pertaining to Duran. In short, Plaintiff contends that "the supplying of filed criminal complaints was an administrative act – one not normally performed by a judge" (ECF No. 20, at p. 3). This contention is belied by the allegations of the amended complaint, which indicate that Plaintiff specifically dealt with each Judicial Defendant in his judicial capacity.

In particular, Plaintiff alleges that he made his initial document request, by telephone, to MDJ Carney "as was the custom for the last ten years," and later followed up in writing to MDJ Carney (ECF No. 4, at ¶ 17). Then, after the case was transferred to MDJ Wilson, Plaintiff telephoned MDJ Wilson personally to discuss his request for Duran's case file (Id. at ¶ 21). Plaintiff even claims that he "had a right to receive from" each Judicial Defendant the requested documents relating to Duran, and that each judge had a "duty to provide the requested record" (Id. at ¶¶ 29, 32, 43, 47). Such an alleged duty could only arise from the performance of an official function. Plaintiff cannot argue on the one hand that the supplying of criminal records is not an act "normally performed by a judge" and then claim that the Judicial Defendants had a duty to supply the records and that he had a right to expect them to honor his requests. It is apparent that Plaintiff's claims in this regard implicate the Judicial Defendants' judicial, rather than administrative, functions, and are, thus, subject the bar of absolute judicial immunity.[2]

---

[2] Though not specifically cited as the basis of any of his claims against MDJ Carney, it must be noted that Plaintiff's allegations regarding MDJ Carney's "aggressive and confrontational behavior" toward him, and MDJ Carney's hearing of a civil matter filed against Plaintiff by one of his former clients, in contravention of his recusal from all matters pertaining to Plaintiff, all relate to actions that were allegedly taken by MDJ Carney in his judicial capacity. Thus, to the extent any of Plaintiff's claims may be related to such conduct, they too are subject to the bar of absolute judicial immunity.

In the alternative, Plaintiff argues that the Judicial Defendants "were absent all jurisdiction because the documents requested were public." Thus, according to Plaintiff, "[n]either judge had jurisdiction over the matter because they had no official power to decide or judge who should be the receiver of public information" (ECF No. 20, at p. 4). This argument is without merit. It bears repeating that Plaintiff must demonstrate that the Judicial Defendants acted in the "complete absence of *all* jurisdiction" in order to avoid the bar of judicial immunity. This Plaintiff cannot do. As presiding judge over Duran's criminal proceedings, each Judicial Defendant was acting within his judicial capacity when he prohibited Plaintiff's access to Duran's case file. At most, their actions may have exceeded their authority, but acting in excess of authority is not nearly the same as acting in the complete absence of jurisdiction. See Stump, 435 U.S. at 359 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by grave procedural errors"); Mireles, 502 U.S. at 13 (holding that a judge merely acted in excess of his authority in ordering police officers to use excessive force in bringing an attorney to his courtroom for a calendar call).

Based on the foregoing, therefore, Plaintiff's claims against the Judicial Defendants in their individual capacities are barred by the doctrine of absolute judicial immunity and will be dismissed.

An appropriate Order follows.